UNITED STATES of America ex rel.
Zelma C. WYCHE

v.

C. E. HESTER, Sheriff of Madison Parish; and W. J. Erwin, Warden, Keeper or Chief Officer of the East Carroll Prison Farm.

Civ. A. No. 12429.

United States District Court
W. D. Louisiana,
Monroe Division.

Aug. 30, 1967.

**132**

———◆———

Richard B. Sobol, Robert F. Collins, and Nils R. Douglas, New Orleans, La., for plaintiff.

Thompson L. Clarke, Dist. Atty., Sixth Judicial District, St. Joseph, La., and Jack P. F. Gremillion, Atty. Gen. of Louisiana, William P. Schuler, Asst. Atty. Gen. of Louisiana, Baton Rouge, La., for defendants.

BEN C. DAWKINS, Jr., Chief Judge.

### RULING ON THE MERITS

On September 28, 1966, petitioner was convicted in a Louisiana State Court of simple battery.[1] Petitioner was then sentenced to four months in prison and fined $200 with the stipulation that if the fine were not paid, an additional four months imprisonment would be imposed. The Louisiana Supreme Court denied certiorari on the grounds that there was no error patent on the face of the record and that no bill of exceptions had been

filed.[2] From this denial, petitioner sought relief in this court alleging that the state court conviction was in violation of his federal rights under 42 U.S.C. § 2000a–2 [3] (Civil Rights Act) not to be prosecuted for the exercise of civil rights guaranteed by 42 U.S.C. § 2000a (a) [4] of the Act. Petitioner alleged that he is entitled to an evidentiary hearing in this court to show that the above rights have been violated by the state court conviction,[5] and, in addition, that he was not afforded a full and fair hearing according to the mandate laid down by the United States Supreme Court in Townsend v. Sain.[6] The case was submitted, however, on the state court record and briefs filed by counsel.

Petitioner, a Negro, is President of the Madison Parish Voters League, a local organization in Tallulah, Louisiana, devoted to securing equal rights for Negro citizens. On July 28, 1966, at approximately 6:00 p. m., petitioner and a group of Negroes entered Bill's Highway 80 Truckstop, a place of public accommodation as defined in 42 U.S.C. § 2000a (b), for the purpose of seeking service in compliance with the provisions of the Civil Rights Act. Petitioner and the group were voluntarily served by the owner, Mr. Bill Presley, and his employees.[7] During this time, one of the persons seeking service threw an object

---

1. LSA–R.S. § 14:35. Simple battery. "Simple battery is a battery, without the consent of the victim, committed without a dangerous weapon."

2. 249 La. 757, 190 So.2d 915 (1966); on the question of denial of bail, see 249 La. 777, 191 So.2d 496 (1966).

3. 42 U.S.C. § 2000a–2. "No person shall (a) withhold, deny, or attempt to withhold or deny, or deprive or attempt to deprive, any persons of any right or privilege secured by section 2000a or 2000a–1 of this title, or (b) intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person with the purpose of interfering with any right or privilege secured by section 2000a or 2000a–1 of this title, or (c) punish or attempt to punish any person for exercising or attempting to exercise any right or privilege secured by section 2000a or 2000a–1 of this title."

4. 42 U.S.C. § 2000a. "(a) All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin."

5. Hamm v. City of Rock Hill, 379 U.S. 306, 85 S.Ct. 384, 13 L.Ed.2d 300 (1964); Rachel v. State of Georgia, 384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966); Tolg v. Grimes, 355 F.2d 92 (5th Cir. 1966); Dilworth v. Riner, 343 F.2d 226 (5th Cir. 1965).

6. 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

7. See Transcript, pp. 5, 134.

at a waitress in the restaurant.[8] The record is void of any provocation for such an incident.

That same evening, the Reverend T. H. Turner, a member of the Voters League, told petitioner that he had gone to the above named restaurant and had been refused service at a later hour. Acting on this information, petitioner and another group of Negroes returned to Bill's to "see what was wrong."[9] This visit took place around ten o'clock on the night in question. Upon arriving at the restaurant, the group found that the lights had been turned out, but people were still inside the restaurant. While there is conflicting testimony whether the restaurant customarily stayed open twenty-four hours a day, the owner testified that he had been requested to close "to keep down trouble."[10] and that he had his employees clean up before closing.[11] According to the owner and the patrons in the restaurant at the time, the front door to the restaurant was locked and a chair had been placed against the door to prevent its opening.[12] There is conflicting testimony as to whether petitioner forced his way into the building or whether he opened an already unlocked door and entered peacefully.[13] In either event, after gaining entrance to the restaurant, petitioner asked to see the manager but was repeatedly told that the manager was next door at the filling station. He then demanded that the manager be summoned to be confronted with the allegation of non-service to Reverend Turner. During this period of time, petitioner and Dr. John Monsell, a patron in the restaurant, became involved in a somewhat heated conversation which resulted in their moving outside the eating establishment. At this time or shortly thereafter, petitioner is alleged to have whistled, causing a large crowd of Negroes to form around Dr. Monsell. It was during this sequence of events that Dr. Monsell allegedly received several blows to his body from behind and had his shirt torn. The identity of the person or persons delivering the blows was not ascertained, and it was established by the petitioner and admitted by the State that petitioner himself did not deliver the blows. At trial of the case without jury, the court found that although petitioner had not himself physically committed the battery upon Dr. Monsell, he had *procured* the commission of the same, and under the facts of this case and the law of Louisiana, an accessory before the fact is a principal.[14] Accordingly, the judge found petitioner guilty of simple battery.

In applying to this court for relief, petitioner has set forth a three point argument. First, it is alleged that petitioner is entitled to an evidentiary hearing in this court to prove that the prosecution against him was in violation of the Civil Rights Act of 1964, specifically 42 U.S.C. § 2000a–2. Next, that the conviction violated his right to due process of law because there was no evidence of the essential elements of the crime charged. Finally, that the conviction should be set aside because petitioner was denied his right to trial by jury secured by the Sixth and Fourteenth Amendments which have been made applicable to the states.

8. Id., 34, 145.

9. Id., 135.

10. Id., 10.

11. Id., 8.

12. Id., 9, 40, 50, 65.

13. See note 12 and Transcript 82, 151, et seq.

14. LSA–R.S. § 14:24. "Principals. All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals." Cf. 18 U.S.C. § 2(a): "Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal."

■■ In support of his first argument that the conviction is violative of federally protected rights thus entitling him to an evidentiary hearing, petitioner relies exclusively on the cases of Hamm v. City of Rock Hill, Rachel v. State of Georgia, Dilworth v. Riner, and Tolg v. Grimes.[15] In each of the above cases the crime charged was violation of state trespass statutes. In giving scope and meaning to the public accommodations section of the Civil Rights Act involving prosecutions under state trespass statutes, the United States Supreme Court in Hamm v. City of Rock Hill couched their analysis in the following fashion:

"On its face, this language [of the Act] prohibits prosecution of any person for seeking service in a covered establishment, because of his race or color. It has been argued, however, that victims of discrimination must make use of the exclusive statutory mechanisms for the redress of grievances, and not resort to extralegal means. *Although we agree that the law generally condemns self-help, the language of § 203(c) supports a conclusion that nonforcible attempts to gain admittance to or remain in establishments covered by the Act, are immunized from prosecution, for the statute speaks of exercising or attempting to exercise a 'right or privilege' secured by its earlier provisions. * * * *"* 379 U.S. at 311, 85 S.Ct. at 389. (Emphasis added.)

Thus it was held that the types of conduct "immunized from prosecution" in exercising the rights granted under the Act are *"nonforcible* attempts to gain admittance to or to remain in establishments covered by the Act." In his application for habeas corpus and an evidentiary hearing addressed to this Court, petitioner candidly admits that if he actually procured a battery, "this would plainly negate his claim that his conduct was protected by Title II of the 1964 Act." We might also add at this point, assuming *arguendo,* that if petitioner were in fact exercising a right under the provisions of the Civil Rights Act, he was bound to exercise that right in a "nonforcible" manner or his conduct would not be condoned by law. The criterion for the granting of an evidentiary hearing in federal court was emphatically set forth in Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770, in the following manner:

" * * * We hold that a federal court must grant an evidentiary hearing to a habeas applicant under the following circumstances: If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing." 372 U.S. at 313, 83 S.Ct. at 757.

In a more recent decision arising in the Fifth Circuit Court of Appeals,[16] the standard to be followed was set forth in this manner:

" * * * The right to public accommodations on a non-discriminatory basis is a federal right the claim to which, Congress has said, shall not be the subject matter of punishment. There is nothing in this express interdiction which could be construed as meaning that appellants may be punished by prosecution in a state trial court so long as they may later vindicate their right not to be punished in a state appellate court or in the United States Supreme Court. They may

---

15. See note 5, supra.

16. Dilworth v. Riner, 343 F.2d 226 (5th Cir. 1965).

simply not be punished and prosecution is punishment.

"The federal court may take jurisdiction where punishment by way of prosecution is attempted, if the sit-ins were peaceable or nonforcible and in a restaurant covered by the Act. * * * " 343 F.2d 231.

The principles articulated in the above cited cases have now been codified.[17] This court further recognizes that the policy against interference with state criminal proceedings is simply a rule of comity, not of statutory derivation and it is not a rule distributing power as between the state and federal courts.[18]

■ After a careful scrutiny of the entire record and application of the principles in the aforementioned authorities, we hold that petitioner is *not* entitled to an additional evidentiary hearing in this court. In the first place his counsel agreed to submit the matter on the state court record (See minutes of Court dated December 14, 1966). In the next place, petitioner had already been served voluntarily at the restaurant; and finally, the altercation involving Dr. Monsell and the crowd of Negroes summoned by petitioner occurred outside the restaurant and only indirectly involved an earlier incident concerning the alleged refusal to serve Reverend Turner. All of the authorities cited by petitioner involved convictions secured under anti-trespass statutes as a result of peaceful and nonforcible demonstrations. In the instant case the conviction rests upon a charge of battery which by its nature is a crime of force. Leaving aside the nature of the crime of battery, the record further discloses that the demonstration in this case was anything but peaceful and nonforcible. The evidence showed that the group accompanying petitioner was armed and that they crowded around Dr. Monsell in a hostile manner outside of the restaurant. Considering the time of night and the size of the crowd, this gathering did not have any of the earmarks of peace. According to petitioner's own testimony, the facts related to him by Reverend Turner did not amount to a refusal of service at the restaurant.[19] We fail to see that petitioner attempted to confront the manager with this alleged refusal in a manner protected by law. Because of this finding, we hold petitioner was not engaged in nonforcible conduct which is "immunized from prosecution."

■ Petitioner's next argument is that his conviction should fall due to the lack of evidence to prove the essential elements of the crime.[20] On this point, we find that the record does contain sufficient evidence to prove each element of the crime charged. The trial court found that the evidence, viewed as a whole, supported the state's contention that someone in fact struck Dr. Monsell in a hostile manner. In similar fashion, the court found that the crowd responded to the words and actions of the petitioner[21] which led to the alleged battery upon Dr. Monsell. This finding was the basis of

17. See 28 U.S.C. § 2254 as amended in 1966: "State custody; remedies in Federal courts.

"(a) The Supreme Court a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

18. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Dilworth v.

Riner, 343 F.2d 226 (5th Cir. 1965); United States v. Wood, 295 F.2d 772 (5th Cir. 1961).

19. See Transcript 146.

20. Thompson v. City of Louisville, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960).

21. It was shown by the testimony of several witnesses including petitioner that petitioner whistled and that this had an effect on the crowd, see Transcript 12, 46, 127, 142.

**136**

the court's conclusion that petitioner was a principal to the commission of the crime. The identity of the person or persons delivering the alleged blows was not necessary to prove the crime and this fact is admitted by petitioner.

■ Petitioner's final argument, that he was entitled to a trial by jury under the Six and Fourteenth Amendments as made applicable to the states, we dispose of with little difficulty. It has long been settled that the Fourteenth Amendment's due process clause does not guarantee the right to jury trial in state criminal proceedings.[22] Cheff v. Schnackenberg,[23] cited extensively by petitioner, does not support a different conclusion as petitioner contends. To the contrary, the most *Cheff* holds is that:

"* * * in the exercise of the Court's supervisory power and under the peculiar power of the federal courts to revise sentences in contempt cases, we rule further that sentences exceeding six months for criminal contempt may not be imposed by federal courts absent a jury trial or waiver thereof. * * *" 384 U.S. at 380, 86 S.Ct. at 1526.

Thus, the very narrow holding of this case is that in *contempt* proceedings in *federal* court, a sentence in excess of six months may not be imposed without jury trial or waiver thereof. Petitioner Wyche's conviction was not in federal court and did not rest upon a contempt charge. Nothing in *Cheff* indicates that the holding is made applicable to the states, nor do *Gideon* and *Pointer*[24] compel such a holding.

■ Admittedly, the testimony at the state trial was in conflict on various points. However, the trial judge was in an impartial position to weigh the evidence presented. The factual determination made by the trial court was amply fortified by the record as a whole, and the trial judge ably and impartially resolved the merits of the factual dispute. There has been no allegation of newly discovered evidence and the state court proceeding fully afforded petitioner a fair and impartial forum to adequately assert all of his rights. In particular, we note that petitioner was represented by counsel and was confronted with all accusers as well as given adequate opportunity for cross examination of all witnesses. No bills of exception were taken.

In conclusion we hold that petitioner was not held in custody in violation of the Constitution or laws or treaties of the United States and is therefore not entitled to a further evidentiary hearing on his application for a writ of habeas corpus. *Surely the Supreme Court never intended to require a complete re-trial of cases of violence such as this.* Accordingly, this Court's earlier order requiring him to be released on bond during the pendency of this proceeding is hereby recalled and rescinded, and petitioner is hereby remanded to the custody of the State to serve the remainder of his sentence. A certificate of probable cause will not be issued by this Court.

22. Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); Fay v. People of State of New York, 332 U.S. 261, 67 S.Ct. 1613, 91 L.Ed.2d 2043 (1947); Palko v. State of Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937); Jordan v. Com. of Massachusetts, 225 U.S. 167, 32 S.Ct. 651, 56 L.Ed. 1038 (1912); Maxwell v. Dow, 176 U.S. 581, 20 S.Ct. 494, 44 L.Ed. 597 (1900); United States ex rel. Tillery v. Cavell, 294 F.2d 12 (3rd Cir. 1961); Hughes v. Heinze, 268 F.2d 864 (9th Cir. 1959).

23. 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed. 2d 629 (1966).

24. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Pointer v. State of Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).