**Mardon R. WALKER and James R. Forman, Appellants,**

v.

**STATE OF GEORGIA, Appellee.**

**No. 26332.**

United States Court of Appeals
Fifth Circuit.

Sept. 29, 1969.

Howard Moore, Jr., Peter E. Rindskopf, Atlanta, Ga., for appellants.

J. Robert Sparks, Jack E. Mallard, Asst. Sol. Gens., Tony H. Hight, Asst. Dist. Atty., Lewis R. Slaton, Dist. Atty., Atlanta, Ga., for appellee.

Before TUTTLE, and SIMPSON, Circuit Judges and CASSIBRY, District Judge.

TUTTLE, Circuit Judge.

This and the case of Walker v. State of Georgia, 417 F.2d 1, decided today by this court are consolidated appeals from the remand to the Superior Court of Fulton County, Georgia, of two removal petitions filed in the United States District Court for the Northern District of Georgia, Atlanta Division, pursuant to Section 1443(1), Title 28, United States Code.[1]

Petitioners-Appellants Mardon R. Walker and James R. Forman in this case were charged with riot, malicious mischief and other offenses against public order. On January 25, 1964, several Negro and white citizens (not including Appellants who at all times were on the outside) unsuccessfully sought service and accommodations at Leb's Restaurant which is a covered establishment under Title II of the 1964 Civil Rights Act. Approximately twenty-two months later, on or about November 25, 1965, a Fulton County Superior Court judge on his own initiative ordered the Solicitor General of Fulton County to prepare an indictment against the petitioners, charging them with violating Georgia's malicious mischief, riot and other offenses against public order statutes.[2] The grand jury indicted both Miss Walker and Forman, then Executive Secretary of SNCC, on the judicially prescribed charges for their "alleged" role in an attempt to obtain routine service at Leb's Restaurant.[3] Up to this time (some 22 months) the sit-in attempt at Leb's had led to no charges against *anyone* even for trespass. It has still led to no charges against any of the persons who gained an entrance to the restaurant.

Miss Walker and Mr. Forman alleged in their petition for removal that the statutes under which they are charged as applied and used against them infringe upon and deprive them of their *equal rights* and access to places of public accommodations in violation of the specific grants of Title II of the Civil Rights Act of 1964, and that they are denied and/or cannot enforce in the courts of the State

1. Any of the following civil actions or criminal prosecutions, commenced in a State Court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:
   (1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof.

2. This followed a reversal of the conviction of Miss Walker for "trespass" by the United States Supreme Court. This case is discussed further in the companion *Walker* case.

3. This indictment against Miss Walker and Mr. Forman was more specifically stated as:
   " * * * did wilfully, maliciously, violently, tumultuously, and unlawfully, together with other persons, who are to the Grand Jurors unknown, numbering in excess of fifteen persons, said accused and said other unknown persons being motivated by the common intent and purpose to unlawfully disturb and disrupt the operation of the restaurant business carried on in said county at said time by Lebs Incorporated, doing business under the name of Leb's and located on the corner of Luckie Street and Forsyth Street in the city of Atlanta, enter and invade the premises of said Lebco, Incorporated, at said place, in a violent and tumultuous manner, and while therein, did unlawfully smash and break the legs of booths, and urinate in pots, glasses, utensils and equipment in said restaurants; that the said WALKER and the said FORMAN, *being present on the outside of said premises* and restaurant at said time and place, did aid, abet, counsel, assist, direct, and command said unknown persons to commit the aforesaid acts of entering said premises in said violent and tumultuous manner, smashing and breaking the legs of said booths, and urinating in said pots, glasses, utensils and equipment therein; thereby injuring and destroying the property of said Lebco, Incorporated;—" (Emphasis added.)

of Georgia rights under the laws of the United States providing for the equal rights of citizens as guaranteed under Title II of the 1964 Civil Rights Act. The defendants removed the case to the United States Court for the Northern District of Georgia, which upon motion of the State of Georgia remanded it to the state court. This appeal followed.

Once again, this court is called upon to determine whether another case falls within the permissible scope of removal under the principles announced by the Supreme Court in State of Georgia v. Rachel, 384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966) and City of Greenwood, Mississippi v. Peacock, 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944. While we agree that the permissible scope for removal is narrow and limited, we have held that the right of removal of a state criminal prosecution has not been restricted by the Supreme Court to the small group of cases in which a state prosecution for *trespass* seeks to forbid the enjoyment of the right to equal accommodation guaranteed under Title II of the Civil Rights Act of 1964. See Whatley v. City of Vidalia, 5 Cir., 399 F. 2d 521, 527 (1968) (exercise of the voting rights granted by the Voting Rights Act of 1965, 42 U.S.C.A. § 1973i(b) ; Wyche v. State of Louisiana, 5 Cir., 394 F.2d 927 (1967) (charge of aggravated burglary), and Achtenberg v. State of Mississippi, 5 Cir., 393 F.2d 468 (1968) (charge of vagrancy). Our most recent pronouncement in this regard is Walker (*not* Mardon Walker) v. State of Georgia, 5 Cir., 1969, 405 F.2d 1191, in which the state had charged Walker with "assault." Reversing an order remanding the case to the state courts, this court said:

"The requirement of Rachel is that the District Court is to conduct a hearing to determine whether appellant was being prosecuted solely for his peaceful and nonforcible attempt to gain service. If his allegations in this regard are found to be true, then it would follow

that his conduct is immunized from prosecution by 42 U.S.C.A. § 2000a–2 (c). In that event the removals would be sustained, and the prosecutions dismissed. See also Achtenberg v. State of Mississippi, 5 Cir., 1968, 393 F.2d 468, 475; Wyche v. Louisiana, 5 Cir., 1967, 394 F.2d 927. We reiterate what we said in Wyche, i. e., that it is not the state charge which controls; rather, what appellant was actually doing with respect to the exercise of his federally protected rights." 405 F.2d 1191, 1192.

■■ It has always been the position of the court that unless the Supreme Court expressly limits its opinion to the facts before it, it is the principle which controls and not the specific facts upon which the principle was decided. Here the controlling principle is that the court will not allow *any* state statute to be used to deny any citizen the peaceful exercise of rights guaranteed to him by Title II of the 1964 Civil Rights Act.

■ The test of removability is comparable to the test for the existence of federal jurisdiction—the well pleaded petition of the petitioner. This test of removability is governed, in the first instance, by the content of the petition and not the characterization given the conduct in question by the prosecution. State of North Carolina v. Hawkins, 4 Cir., 365 F.2d 599. The issue then to be decided in a hearing for remand is what the movant was actually doing with respect to the exercise of his right granted in terms of equality by some federal statute. Georgia v. Rachel, *supra*.

The trial court concluded that even if the charges were groundless or if the evidence was insufficient to support a conclusion of guilt of the crimes charged that the state court is the only court of competent jurisdiction to make the initial determination and that accordingly the merits of the charges should not be decided by the federal court.[4] The

4. The trial court stated, "If the charges are groundless or if the evidence is insufficient to support a conclusion of guilt, this is a determination to be made initially in the state forum."

Supreme Court in Georgia v. Rachel, *supra*, 384 U.S. at 807, 86 S.Ct. at 1800 held to the contrary. It stated:

. " * * * [O]ne of the functions of the hearing on the allegation of the removal petition will be to *determine* whether the defendants were rejected on racial grounds or for some other, *valid,* reason. (Emphasis added.)

This court has also in a recent case made this explicit. In Walker v. State of Georgia, this court in a remand case in which the movant had been charged with assault said:

"It appears that the issue for the District Court is whether appellant engaged in non-peaceable conduct, i. e., simple assault, when or after he was refused service but this issue is to be resolved in the federal forum in the first instance and in the context of his federal statutory right to obtain service and not to be prosecuted for his effort. This means that the court will not reach the question of the state's good faith."

█ It is the primary purpose of § 1443(1) to remove from state courts groundless charges not supported by sufficient evidence when these charges are based on race and deny one his federally protected equal rights as guaranteed by Title II of the 1964 Civil Rights Act. We find nothing either explicit or implicit in the language of the Supreme Court in Peacock, *supra*, to support a contrary interpretation when it stated, "The civil rights removal statute does not require and does not permit the judges of the district courts to put their brethren of the state judiciary on trial," for it is the credible and supported evidence as it relates to the applicable law which we are considering, not the character, competency or prejudices of our state brethren.

We, therefore, turn our attention to the evidence presented in the trial court. The trial court did not make any factual determination as to whether *any* of the persons inside the restaurant did commit any of the illegal acts charged in the indictments. While there is some evidence that one or two identifiable persons did so, the principal witnesses for the *state* cast the strongest doubt on the subject. In this discussion of the evidence of what other persons not indicted did, it must be borne in mind that at *no* time was either Mardon Walker or James Forman inside the restaurant.

One of the state's key witnesses, Mr. Kenotes, the manager, testified on several occasions that the demonstrators generally were quiet and obedient.[5]

When his testimony is taken as a whole, there is but one conclusion—the demonstrators came to Leb's immediately letting it be known that they desired service and that their general conduct was non-violent. The general peaceful conduct of the demonstrators is also supported by the testimony of Police Captain

---

5. " * * * They were going to the counter and back to the counter, they were all over the counter. And so I figured it was my right to tell them to sit in one section and stay there, which they did *obediently at the time.* "Well, they stayed in there from four-thirty, when I arrived—until eleven-thirty * * * but a coordinator, I imagine you would call him, came to the door and said: "Let's go." And then they all went out *peacefully,* but they wouldn't go out when I asked. * * * "Well on the outside they were hand-in-hand just rolling back and forth chatting, that is the colored and white mixed that was out there. *And on the inside they kept pretty quiet* until they started chatting up and down and they started mocking the Klansmen * * * and I asked them to stop that, *which they did.*

" * * * they took them (napkins) and starting making robes out of them and I walked up to there and asked if I couldn't have the napkins back, I said because they didn't belong to us, they are three cents apiece. And one of the boys pulled a dollar out and said: "Here, I will buy them." I said, I don't have the right to sell them to you because they don't belong to me, so I took them back away from them, *they gave them to me.*"

Mozley and the attorney for Leb's, Mr. Cowan.[6]

Of course, we agree that neither the 1964 Civil Rights Act nor the companion removal statute authorize nor can be utilized as a license to "unfettered vandalism or criminal activity," as stated by the trial court. The facts as presented here to us do not indicate that the demonstrators as a group, were involved in any "unfettered vandalism or criminal activity." Demonstrators are clearly responsible for any intentional destruction of property. Here, there is no evidence to support a finding that even the demonstrators who entered the restaurant intended to destroy property when they entered Leb's or at anytime thereafter.

Even if uncontradicted evidence were to support a finding that there were "independent acts of vandalism" that finding could not support the charge against these two appellants, that they,—"being motivated by common intent and purpose to unlawfully disturb and disrupt the operation of Leb's, did aid, abet, counsel, assist, direct and command the demonstration to wilfully, maliciously, violently, tumultuously and unlawfully enter Leb's for malicious mischief and other acts against public order."

■ Under Georgia law, which is the general rule, mere proof of presence is not sufficient to render one an aider or abettor or to authorize a conviction. Gentry v. State, 65 Ga.App. 100, 15 S.E. 2d 464 (1941). It must be shown that the accused participated in the criminal design either by word or deed, Brown v. State, 118 Ga.App. 617, 165 S.E.2d 185 (1968), had knowledge of the wrongful purpose of the perpetrator, or that the accused was connected by act or intent with the commission of the *crime.* Sheppard v. State, 91 Ga.App. 672, 86 S.E.2d 711 (1965). The state did not prove *any* of these elements. At most, the state only proved that both petitioners—*at all times on the outside of the restaurant*— had the *general* reputation of aiding demonstrators in the *peaceful attempts* to obtain routine service at places of public accommodations which had established practices of racial discrimination. Therefore, petitioners at most, would be guilty only to the extent of their knowledge of

---

6. *Mr. Cowan*

THE COURT: Did you see any parts of the booths kicked out or anything?

A: No, sir. I didn't see any. Only one time during the evening there was some activity on the outside, just literately hundreds of people around the outside, and the people overloaded one booth that is, a crowd gathered *maybe* ten people in a booth that is, that was meant for four people. I went over and asked them to remove themselves to quit overloading the booth, *which they did at that time.*

Q. Did you see any urinating on the floor?

A. No, sir, I did not.

Q. Did you see any evidence of that?

A. No, sir.

Q. How long were you there?

A. I was there the *entire* time except for one period of about five minutes.

Q. Well, did you see any acts which as an attorney for Leb's that you concluded were violating any other city ordinance, state laws, other than the Trespass law?

A. Well, the conduct was generally boisterous.

*OFFICER R. E. LITTLE*

A. I saw no acts on the inside that I could book a case against.

*OFFICER J. L. MOZLEY*

A. There was some commotion, not a great big disturbance.

Q. Did anyone report to you that they were urinating in the floor or something?

A. No, sir.

Q. Did you see any evidence of it after you left?

A. No, sir.

*BY THE COURT:*

Q. Did you see any ordinance or any state statute with which they are familiar, other than the trespass statute being violated in Leb's Restaurant?

A. No, sir.

Q. During your time you were there?

A. No, sir. I did not.

Q. If you had, would you have made an arrest?

A. Yes, sir, I would have.

(All emphasis supplied.)

the "crime" intended—obtaining service at a racially segregated restaurant—such insistence of "sitting in" was a "crime" under the Georgia statute at the time, but became a "right" by the passage of the Civil Rights Act which was made applicable to all pending cases by Hamm v. City of Rock Hill, 379 U.S. 306, 85 S.Ct. 384, 13 L.Ed.2d 300.

We, therefore, hold that this case falls within the permissible removal scope of § 1443(1), Title 28 United States Code and that the standards established in both Peacock and Rachel are satisfied.

Rachel type cases require a full evidentiary hearing on the merits of the allegations within the removal petition to determine whether defendants are being prosecuted solely for peacefully attempting to gain equal access to places of public accommodation. Remand to the district court for such a hearing is the usual procedure when none has been held. Wyche v. Louisiana, *supra,* or when the hearing held is found to have been inadequate. Walker v. Georgia supra. But where there has been an adequate hearing and the *undisputed facts* show an utter absence of evidence to support the state charge, the proper cause is for this court to remand to the district court with directions to dismiss the indictments, as the district court itself did with respect to the co-defendants of Miss Walker in the companion Walker case. This court followed this procedure, and remanded with directions to dismiss the state prosecutions in Achtenberg v. Mississippi, supra.

There is no need to delay the ultimate disposition of the case by remanding it to the district court for the making of findings as to the disputed issues dealing with the conduct of *some* of the persons inside the restaurant. There is absolutely *no* evidence to convict *these* appellants for engaging in such conduct. Therefore, the case is remanded to the district court with directions to dismiss the indictments.

Reversed and remanded.