Zelma C. WYCHE, Petitioner-Appellant,

v.

C. E. HESTER et al., Respondents-
Appellees.

No. 28215.

United States Court of Appeals,
Fifth Circuit.

Aug. 25, 1970.

Rehearing Denied and Rehearing En
Banc Denied Oct. 6, 1970.

Coleman, Circuit Judge, dissented
in part and filed opinion.

Richard B. Sobol, Washington, D. C., George M. Strickler, Jr., Collins, Douglas & Elie, New Orleans, La., Anthony G. Amsterdam, Palo Alto, Cal., Alvin J. Bronstein, Cambridge, Mass., for petitioner-appellant.

Jack P. F. Gremillion, Atty. Gen., State of La., William P. Schuler, Asst. Atty. Gen., Baton Rouge, La., Thompson L. Clarke, Dist. Atty., Sixth Judicial Dist., St. Joseph, La., Dorothy D. Wolbrette, Asst. Atty. Gen., New Orleans, La. (on rehearing only), for respondents-appellees.

Before COLEMAN, GOLDBERG, and MORGAN, Circuit Judges.

GOLDBERG, Circuit Judge:

Things were anything but tranquil on July 28, 1966, at Bill's Highway 80 Truckstop in Tallulah, Louisiana. The events of that evening grew out of the civil rights activities of appellant Zelma C. Wyche. Wyche, a Negro, was president of the Madison Parish Voters' League, an organization devoted to securing equal rights for Negroes.[1] In furtherance of this purpose Wyche and a group of Negroes went to Bill's Highway 80 Truckstop, a place of public accommodation as defined in the Civil Rights Act of 1964, seeking service in compliance with the provisions of that Act. The group was voluntarily served on this occasion and departed. That same evening, however, the Reverend T.

---

1.  Wyche is now the Chief of Police in Tallulah.

H. Turner, another member of the Voters' League, informed Wyche that he had later been refused service at the restaurant. Acting on this information, Wyche and his group returned to the restaurant at approximately 10:00 p. m. to investigate. Wyche entered the restaurant, accompanied by some of the group, and asked to see the manager. He was informed that the manager was outside at a filling station. Wyche apparently then requested that the manager be summoned to explain the refusal to serve Reverend Turner. During this time Wyche and Dr. John Monsell, a white patron of the restaurant, became involved in a somewhat heated conversation which resulted in their adjournment to the parking lot in front of the restaurant. At this point the evidence becomes conflicting, but it appears that during the ensuing confusion Dr. Monsell was struck from behind by someone in the crowd. The identity of the person or persons who delivered the alleged blow or blows was not ascertained. It is undisputed, however, that Wyche himself did not strike Dr. Monsell.

The disturbance of that night led to two state prosecutions against Wyche. The first, an aggravated burglary prosecution, was before this court in Wyche v. Louisiana, 5 Cir. 1967, 394 F. 2d 927, where we held that Wyche was entitled to a hearing in federal court on his petition to remove the state prosecution to the federal district court under 28 U.S.C.A. § 1443. The second, a simple battery prosecution, is the subject of this appeal.

Wyche was brought to trial in a Louisiana state court on September 28, 1966, on a charge of simple battery as defined in La.Rev.Stat.Ann. § 14:35.[2] The trial judge, sitting without a jury, found on the basis of disputed testimony that a battery had been committed upon Dr. Monsell and that Wyche was "re-

sponsible" for it. He therefore found Wyche guilty of simple battery. For this offense Wyche was sentenced to four months in prison and fined $200 plus costs.

After exhausting his state remedies Wyche filed a petition for habeas corpus in the court below, alleging among other things that his Louisiana conviction constituted punishment for the exercise of rights guaranteed by Sections 201 and 202 of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000a, 2000a–1, which punishment is prohibited by Section 203 of that Act, 42 U.S.C.A. § 2000a–2. Wyche also contended that his trial in the Louisiana court without the right to a trial by jury violated his rights under the Sixth and Fourteenth Amendments. In considering the petition the district court examined the transcript of the state proceedings, but the court did not hold an evidentiary hearing. The court denied the petition, United States ex rel. Wyche v. Hester, W.D.La.1967, 273 F.Supp. 131, and from that decision Wyche now appeals to this court.

## I.

■ Considering Wyche's jury trial contention first, we note that under Louisiana law simple battery is a misdemeanor punishable by a maximum of two years imprisonment and a $300 fine. La.Rev.Stat.Ann. § 14:35. At the time of appellant's trial Louisiana did not afford an accused the right to trial by jury for such an offense. In his habeas corpus petition Wyche contended that the denial of the right to a jury trial in such a prosecution violated the due process clause of the Fourteenth Amendment. This contention was later sustained by the United States Supreme Court in Duncan v. Louisiana, 1968, 391 U.S. 145, 194, 88 S.Ct. 1444, 20 L.Ed.2d 491, 522. However, in De Stefano v.

2. La.Rev.Stat.Ann. § 14:35 provides:
     Simple Battery
     Simple battery is a battery, without the consent of the victim, committed without a dangerous weapon.

Whoever commits a simple battery shall be fined not more than three hundred dollars, or imprisoned for not more than two years, or both.

Woods, 1968, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308, the Court held that the *Duncan* decision would not be applied to any case in which the trial began prior to May 20, 1968, the date of the *Duncan* opinion. Appellant's trial in the Louisiana court began on September 28, 1966, a time substantially in advance of this magic date. It is clear that appellant's jury trial claim is thus foreclosed by the Supreme Court's ruling in *De Stefano* which admits of no apparent exceptions to its rule of non-retroactivity. We therefore conclude that appellant's Louisiana conviction for simple battery may not be set aside because of that state's refusal to afford him a jury trial.

## II.

Wyche's second contention is that his state *conviction for simple battery* violated Section 203 of the Civil Rights Act of 1964, which prohibits any state from punishing or attempting to punish a person for exercising or attempting to exercise any right or privilege secured by Section 201 or 202 of the Act.[3] One of the statutory rights secured by Section 201 is the right of every person to the "full and equal enjoyment" of places of public accommodation without discrimination on the ground of race.[4]

It is now well established that the protections of Section 203 extend to those peacefully claiming a right to service in a place of public accommodation. In speaking to this question the Supreme Court in Hamm v. City of Rock

Hill, 1964, 379 U.S. 306, 85 S.Ct. 384, 13 L.Ed.2d 300, explained:

"Title II includes several sections, some of which are relevant here, that create federal statutory rights. The first is § 201(a) declaring that '[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation,' which as we have found includes the establishments here involved. Next, § 203 provides:

" 'No person shall (a) withhold, deny, or attempt to withhold or deny, or deprive or attempt to deprive any person of any right or privilege secured by section 201 or 202, or (b) intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person with the purpose of interfering with any right or privilege secured by section 201 or 202, or (c) *punish or attempt to punish any person for exercising or attempting to exercise any right or privilege secured by section 201 or 202.*' [Emphasis by the Supreme Court].

"On its face, this language prohibits prosecution of any person for seeking service in a covered establishment, because of his race or color. It has been argued, however, that victims of discrimination must make use of the exclusive statutory mechanisms for the redress of grievances, and not resort to extralegal means. Although we agree that the law generally condemns

3. Section 203 of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000a–2, provides:
No person shall (a) withhold, deny, or attempt to withhold or deny, or deprive or attempt to deprive, any person of any right or privilege secured by section 2000a or 2000a–1 of this title, or (b) intimidate, threaten, or coerce any person with the purpose of interfering with any right or privilege secured by section 2000a or 2000a–1 of this title, or (c) punish or attempt to punish any person for exercising or attempting to exercise

any right or privilege secured by section 2000a or 2000a–1 of this title.

4. Section 201(a) of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000a(a), provides:
All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.

self-help, the language of § 203(c) supports a conclusion that nonforcible attempts to gain admittance to or remain in establishments covered by the Act, are immunized from prosecution, for the statute speaks of exercising or attempting to exercise a 'right or privilege' secured by its earlier provisions. The availability of the Act as a defense against punishment is not limited solely to those who pursue the statutory remedies. The legislative history specifically notes that the Act would be a defense to criminal trespass, breach of the peace and similar prosecutions." 379 U.S. at 310–311, 85 S.Ct. at 388–389 (footnote omitted).

Later in Georgia v. Rachel, 1966, 384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925, the Court reiterated its earlier position:

"* * * The removal petition may fairly be read to allege that the defendants will be brought to trial solely as the result of peaceful attempts to obtain service at places of public accommodation. The Civil Rights Act of 1964 endows the defendants with a right not to be prosecuted for such conduct. As noted, § 201 (a) guarantees to the defendants the equal access they sought. Section 203 then provides, that, 'No person shall * * * (c) punish or attempt to punish any person for exercising or attempting to exercise any right or privilege secured by section 201 or 202.' [Emphasis by the Supreme Court]. 78 Stat. 244. In Hamm v. City of Rock Hill, 379 U.S. 306, 311, 13 L.Ed.2d 300, 304, 85 S.Ct. 384, the Court held that this section of the Act 'prohibits prosecution of any person for seeking service in a covered establishment, because of his race or color.'" 384 U.S. at 793, 86 S.Ct. at 1790. (footnote omitted).

It is also well settled that the Section 203 privilege against state prosecution may be asserted prior to the state trial by removal to the federal court under 28 U.S.C.A. § 1443(1).

Georgia v. Rachel, supra. Alternatively, one aggrieved by a state prosecution may wait until after the state conviction is final and then, as appellant has chosen to do here, attempt to vindicate Section 203 rights in a federal habeas corpus proceeding to overturn the state conviction. Tolg v. Grimes, 5 Cir. 1966, 355 F.2d 92. It is perfectly obvious that when the removal procedure is used, the federal court must hold an evidentiary hearing to determine whether or not the removal applicant was actually engaged in activities protected under Section 203. Georgia v. Rachel, supra; Walker v. Georgia, 5 Cir. 1969, 417 F.2d 5 (Mardon Walker II); Walker v. Georgia, 5 Cir. 1969, 417 F.2d 1 (Mardon Walker I); Walker v. Georgia, 5 Cir. 1969, 405 F.2d 1191 (Jerry Walker); Wyche v. Louisiana, 5 Cir. 1967, 394 F.2d 927.

Appellant here contends that in every case where the habeas corpus alternative is chosen, the same sort of federal evidentiary hearing is required despite the fact that, unlike the removal procedure, a full state hearing has already been held. We cannot agree with appellant's contention. The necessity for an evidentiary hearing in habeas corpus cases arising out of civil rights activities is governed by the same factors that apply to any other habeas corpus proceeding brought to test the validity of a state conviction. In Townsend v. Sain, 1963, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770, the Supreme Court announced the rules which determine the necessity for a federal evidentiary hearing in such proceedings:

"We hold that a federal court must grant an evidentiary hearing to a habeas applicant under the following circumstances: If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial

allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing." 372 U.S. at 313, 83 S.Ct. at 757.

■■ Applying these standards, we conclude that Wyche was entitled to a federal evidentiary hearing on his allegation that the State of Louisiana subjected him to prosecution for activities protected by Section 203. Under Townsend v. Sain a federal district court in a habeas corpus proceeding must hold an evidentiary hearing if the merits of the factual dispute were not resolved in the state hearing. The factual dispute when Section 203 is asserted as a bar to a state prosecution is whether the person involved was engaged in protected activity at the time he committed the offense which forms the basis of the state prosecution. In the present case the state trial court did not resolve this issue. That court did not mention the appellant's activity or the activities of those accompanying appellant regarding their efforts to integrate Bill's Highway 80 Truckstop. There is no finding by the state court that appellant and his group were not there for the purpose of peacefully obtaining service for Negroes from that establishment, an activity clearly protected by Section 203 of the Civil Rights Act.

■ The mere fact that Wyche was charged with a crime of violence as a result of these activities is not in itself sufficient to prove that he was beyond the pale of Section 203 protection because of non-peaceful acts. This court has repeatedly held that in a proceeding to determine whether a person was engaged in a protected activity under Section 203, the test is what the accused was actually doing with respect to the exercise of his federally protected rights, not the appellation which is attributed to his attempted exercise of the rights by a state prosecutor. Walker v. Georgia (Mardon Walker II), *supra;* Walker v. Georgia (Mardon Walker I), *supra;* Walker v. Georgia (Jerry Walker), *supra;* Wyche v. Louisiana, *supra.*

Moreover, the fact that the state trial court found Wyche *guilty* of a battery under state law does not necessarily mean that he was outside the area protected by Section 203. We note that the state did not even claim that appellant himself struck Dr. Monsell. Indeed, the evidence was uncontradicted that he did not. Rather, appellant was charged with *procuring* a battery, which under Louisiana law makes him liable for punishment as a principal.[5] The trial court found that a battery had been committed and that appellant was "responsible" for it. Thus appellant was found vicariously culpable for the violent acts of other undetermined parties. The trial court did not explain how this "responsibility" on the appellant's part arose. There was evidence that appellant whistled and the crowd gathered around Dr. Monsell as if the whistle was a command. There was other evidence that no whistle was heard. Still other witnesses testified that the whistle was to get the crowd's attention to prevent harm to Dr. Monsell. The trial court never resolved this factual dispute by finding exactly how appellant procured the alleged battery on Dr. Monsell. Further, we are unable to tell whether the trial court believed that appellant's whistle caused the battery or whether it merely stopped a battery already in progress. Consequently, it is impossible to determine whether the trial court found appellant "responsible" for the battery because appellant called together a crowd for

5. La.Rev.Stat.Ann. § 14:24 provides:
   Principals
   All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.

peaceful civil rights activities which later got out of control, or whether appellant's "responsibility" had its origin in a deliberate act by appellant ordering others to commit a battery on Dr. Monsell.

It is clear that there must be some violent and nonpeaceful act on the part of appellant himself before the Section 203 protections are forfeited. One does not lose Section 203 protections by merely organizing a group and being present where others in the group engage in independent acts of criminal activity. In Walker v. Georgia (Mardon Walker II), *supra*, we said:

> "Even if uncontradicted evidence were to support a finding that there were 'independent acts of vandalism' that finding could not support the charge against these two appellants, that they,—being motivated by common intent and purpose to unlawfully disturb and disrupt the operation of Leb's, did aid, abet, counsel, assist, direct and command the demonstration to wilfully, maliciously, violently, tumultuously and unlawfully enter Leb's for malicious mischief and other acts against public order.'" 417 F.2d at 10.

In the instant case the state factfinding was deficient because no clear finding established a nexus between appellant and the alleged battery. In other words, the trial court did not clearly find that Wyche did commit a definite known act of violence. Without such a finding we are unable to tell whether appellant was engaged in activities protected by Section 203 or whether by some act of violence on his part he took himself outside the protected area. We are not concerned with the non-kinetics of Louisiana battery law as such, but there must be a determination as to whether or not the alleged semaphoric message was violent in fact or whether Wyche was acting in furtherance of Section 203 rights.

The district court held no evidentiary hearing on this matter. Rather, that court examined the state court record and concluded from the cold record that appellant and his group were not engaged in Section 203 activities because they came to the restaurant as an armed mob, not as peaceful seekers of service at a place of public accommodation. The crux of our problem is whether the district court was in error in making such a finding from the state court record when the state factfinder had made no such finding. We conclude that the district court was in error. The evidence regarding the activities of appellant and his group was in much dispute. Some witnesses testified that the members of the Voters' League group were armed; others denied this but claimed that those in the restaurant were armed. Some testified that Wyche inflamed the crowd; others testified that he was attempting to quiet them. The state trial court did not resolve this credibility issue. Under the principles announced by the Supreme Court in *Townsend* this situation calls for a federal evidentiary hearing. In speaking to this very question the Court in *Townsend* said:

> "On the remand it would not, of course, be sufficient for the District Court merely to hear new evidence and to read the state-court record. Where an unresolved factual dispute exists, demeanor evidence is a significant factor in adjudging credibility. And questions of credibility, of course, are basic to resolution of conflicts in testimony. To be sure, the state-court record is competent evidence, and either party may choose to rely solely upon the evidence contained in that record, but the petitioner, and the State, must be given the opportunity to present other testimonial and documentary evidence relevant to the disputed issues. This was not done here." 372 U.S. at 322, 83 S.Ct. at 762 (footnote omitted):

We conclude that Wyche was entitled to a federal evidentiary hearing to determine whether or not on the night in question he was engaged in activities protected under Section 203. In making such a determination it should be borne in mind that Louisiana

is not at liberty to make criminal those activities which Section 203 of the Civil Rights Act confers as a right. It follows that aiding, abetting, counseling, or procuring acts of violence must be proved by direct evidence if they are to remove one from the protection of Section 203. The mere presence of a person at a protected activity cannot be used to hold him vicariously culpable for the independent and unprotected violent acts of others. On remand the state conviction must be set aside unless there is evidence presented to justify a finding that Wyche directly counseled, commanded, ordered, or solicited the alleged battery on Dr. Monsell and thereby withdrew himself from the protections of Section 203 of the Civil Rights Act.

Reversed and remanded for proceedings not inconsistent with this opinion.

COLEMAN, Circuit Judge, concurring in part and dissenting in part.

I concur in that portion of the majority opinion which holds that Wyche was not, at the time of his trial, entitled to a jury.

I regret the necessity for emphatically dissenting to the remainder of the majority opinion holding that Wyche is entitled to an evidentiary hearing. That regret is sharpened by the belief that the majority inflicts an unwarranted Sunday punch upon the already sagging ability of local governments to enforce their laws against crimes of violence.

I think this case should have been affirmed on the able (and, in my opinion, unassailable) opinion of the District Court, 273 F.Supp. 131.

I would deny an evidentiary hearing for two reasons: (1) Wyche and his counsel agreed in the court below to submit this case on the complete record of the state court trial, where Wyche was represented by counsel and gave his own version of the attack on Dr. Monsell; (2) To me, it is unmistakably obvious that at the time of the battery in question Wyche was not engaged in a protected activity.

In his testimony in the State Court Wyche admitted three times that he did not go to the truck stop to obtain service [Page 183, et seq. of the state trial transcript]. It is undisputed that Wyche got into a personal controversy with a patron in the building. It is undisputed that the battery was committed outside the cafe—not in it. It is undisputed that the management took no part in the Wyche-Monsell controversy.

Wyche went to the truck stop to "investigate" a complaint by a third party that he had been denied service. He admitted that he took along fifty or seventy five others. There was testimony that some of these were armed, and displayed their weapons.

There was abundant proof that when Wyche entered the cafe he asked for the manager. He was told that the manager was at the adjacent filling station. He demanded that the manager be sent for. Monsell, a customer, suggested that if Wyche wanted to see the manager that he go over to the filling station. Wyche asked Monsell "What is it to you"? One word brought on another and Wyche asked Monsell, "Do you want your —— whipped"? Monsell asked, "Who is going to do it, you"? Wyche replied that he "would have it done", stuck his head out the door, and gave two shrill whistles by placing his hands to his mouth. Monsell attempted to leave but those accompanying Wyche rushed up, cut him off from his vehicle, and kicked him over the kidneys and in the seat of his pants. To me, it is useless for this Court to say that Wyche did not personally strike Monsell; that he caused it to be done is indisputably obvious, as the state trial judge found.

The altercation was quickly stopped by another customer, James Earl Shrivers, who obtained a shotgun and prepared for action, whereupon the self-appointed "investigators" precipitately lost interest in the matter and fled the scene. I would suggest that Shrivers had as much right to quell the violence as Wyche had to precipitate the attack.

I say, with all the conviction of which I am capable, that this is simply too much to shield under the guise of a "protected right", which in fact did not exist, and I do not overlook the fact that Wyche and his counsel made no effort to remove this case to the federal courts for trial on the merits when the prosecution was begun, as they could have done under decisions known to every "civil rights" lawyer.

I heartily agree with the statement of the District Court, 273 F.Supp. at 136, "Surely the Supreme Court never intended to require a complete re-trial of cases of violence such as this".

I object to requiring any further proceedings in this case.

### ON PETITION FOR REREARING AND PETITION FOR RE-HEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

COLEMAN, Circuit Judge, dissents.