**STATE OF LOUISIANA**

v.

**Donald Ray PERKINS (two cases).**

**STATE OF LOUISIANA**

v.

**Roger D. PERKINS.**

**Crim. Nos. 71–38 to 71–40.**

United States District Court,
E. D. Louisiana,
Baton Rouge Division.

Dec. 30, 1971.

Sargent Pitcher, Jr., Dist. Atty., Ralph L. Roy, J. David McNeill, III, Cheney Joseph, Jr., Asst. Dist. Attys., Baton Rouge, La., for plaintiff.

Murphy W. Bell, Robert C. Williams, Baton Rouge, La., for defendants.

E. GORDON WEST, Chief Judge:

The defendants here, both residents of the City of Baton Rouge, were charged on November 16, 1970 in the Nineteenth Judicial District Court of Louisiana with violating Louisiana R.S. 14:34, i.e.,

having committed aggravated battery. Donald Ray Perkins was charged with having committed a battery on K. T. Seaberry and Glenn Wunstel, with a pistol. Roger D. Perkins was charged with striking Ed Crochet with a chain. The defendants in those state court proceedings filed separate petitions in this Court for removal. Subsequently, the State of Louisiana filed motions to remand.

As grounds for removal, defendants alleged that the arrests were, in effect, the result of exercising their rights under the Civil Rights Act of 1964, Title 42 U.S.C.A. § 2000a–2, to have access to a place of public accommodation, the "Bier Keller." The fact that the Bier Keller is such a place of public accommodation is not disputed.

On July 30, 1971, an evidentiary hearing was held by this Court on the three cases in order to determine whether or not they should be remanded to the State Court for trial.

At the hearing Captain LeRoy Watson, head of the Intelligence Division of the Baton Rouge Police Department, testified that two of his officers, Breeland and Garrison, were instructed to search for two missing girls. They received some information that the girls had been seen at the Bier Keller and went there to pursue the lead. Captain Watson testified that he was told by the officers in their report that they were inside the bar when they heard a fight begin outside. They went out to investigate. A white motorcycle gang and several blacks were fighting. During the altercation several persons were hit with chains and one was shot. Donald Ray Perkins was arrested and turned over to the uniform patrol division which had arrived. There was no testimony as to the time when Roger Perkins was arrested, but from later testimony concerning efforts to get bail, the Court concludes that he was arrested at the scene of the incident.

Doris Perkins, mother of the two boys, testified that one or two weeks earlier her sons had told her that some policemen had threatened to keep Negroes out of the bar. An unidentified woman also called her and told her to keep the boys away from there. The night of the arrests, Mrs. Perkins and her husband were called down to Chimes Street, the location of the Bier Keller. She stated that the gang ran her sons out of the bar and hit Donald in the head. But according to her other testimony, she did not arrive until after the fight had started. Roger was also hit. She stated that she saw Donald with a gun, that he hit someone with it, and was then arrested by one of the plainclothesmen. Mrs. Perkins testified that after Donald was handcuffed someone grabbed him, threw him against the wall, and struck him with a pool stick. At this time, one of the plainclothesmen had a gun pointed at Donald's head.

Roland Marcel, a companion of the Perkins brothers, corroborated Mrs. Perkins' prior testimony of police threats several weeks before the incident causing the arrests. He stated that some policemen said they would "keep the blacks from using foul language." Marcel interpreted this to mean "they didn't want us down there." He testified that on November 16 he went to the area of the Bier Keller with the two Perkins boys. There he saw a parked squad car containing two uniform policemen. He also said that two plainclothesmen were present but the testimony is unclear as to whether or not they were in the car. According to his testimony the motorcycle gang pulled up in front of the Bier Keller, walked to the squad car, and talked to its occupants. The squad car then pulled off.

Marcel also testified that after Donald Ray Perkins was handcuffed, one policeman made some derogatory comments and allowed a gang member to hit Perkins with a pool stick.

The testimony of the other three witnesses at the hearing does not concern the incident or facts leading up to the arrest.

To summarize the facts as presented at the hearing: (1) There were threats made by some policemen several weeks prior to the incident on November 16. But there was no evidence to show that these earlier threats were made by the same policemen present at the incident or that they were part of a plan of black persecution by the police department. (2) Policemen in a squad car conversed briefly with members of a white motorcycle gang outside of the Bier Keller and then drove away. No witness had any knowledge of the substance of the conversation. (3) Two plainclothes officers were inside the bar looking for two missing girls. (4) The Perkins boys went to the Bier Keller, an establishment in which they had been served frequently in the past. (5) An altercation occurred between the motorcycle gang and several Negroes, including the two Perkins brothers, during which several people were hit with chains and guns and one was shot. It is unclear just how the fight began; it is also unclear whether the fight was outside of the bar, or whether it began outside and then progressed to the interior of the establishment. (6) Donald Ray Perkins had a gun and hit someone with it. (7) He was then arrested. (8) There was evidence of possible police misconduct after the arrest was made.

28 U.S.C.A. § 1443(1), the statute under which the defendants seek to remove their criminal cases, reads as follows:

"Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place where it is pending:

"(1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof; * * *."

In order to effectively invoke this section of the statute defendants must meet two requirements. They must show: (a) that the right upon which they rely is a "right under any law providing for . . . equal civil rights" and (b) that they are denied that right or cannot enforce it in state court. "Any law" means a law comparable to the Civil Rights Acts of 1866—"any law providing for specific civil rights stated in terms of racial equality." Georgia v. Rachel, 384 U.S. 780, 788, 86 S.Ct. 1783, 1788, 16 L.Ed.2d 925 (1966).

In Georgia v. Rachel, supra, the Supreme Court held that Section 203 of the Civil Rights Act of 1964, Title 42 U.S.C.A. § 2000a–2, was such a "law." The Court held that if the state prosecution for a violation of the state trespass law was being pursued by the state because the defendants were requested to leave a place of public accommodation on account of their race or color, such prosecution was expressly prohibited by Section 203 of the Civil Rights Act. This statute specifically prohibits the prosecution of any person resulting from the exercise of his rights as provided in the public accommodations section of the Act.

The Fifth Circuit Court of Appeals has held that it makes no difference what label is put by the state on the defendant's activities (whether "trespass" as in *Georgia* or "aggravated battery" as here). "The petition for removal is to be determined not by the appellation or euphemism of the charge but by what the movant was actually doing." Walker v. State of Georgia, 417 F.2d 1, 5 (CA 5–1969); Whatley v. City of Vidalia, 399 F.2d 521 (CA 5–1965); Wyche v. State of Louisiana, 394 F.2d 927 (CA 5–1967).

This case is distinguishable from those in which the state charge is trespassing or unauthorized entry. The Civil Rights Act of 1964 as construed in Hamm v. City of Rock Hill, 379 U.S. 306, 85 S.Ct. 384, 13 L.Ed.2d 300, specif-

ically confers upon persons the absolute right to violate such state laws when attempting to gain service in a place of public accommodation. Any attempt to prosecute persons for such activity would directly deny their federal right. Greenwood, Miss. v. Peacock, 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944.

In a case such as the instant one, where the charge is aggravated battery the question to be answered is whether or not the defendants were arrested on a spurious charge to punish them for entering a protected place, or whether they were in fact engaged in violent conduct.

As stated in Wyche v. Hester, 431 F. 2d 791, 797 (CA 5–1970), "It is clear that there must be some violent and non-peaceful act on the part of appellant himself before the Section 203 protections are forfeited." By committing a battery, a defendant would remove himself from the protection of the Act and be subject to state prosecution for his offense.

It appears that the instant case is similar to Walker v. Georgia, 405 F.2d 1191 (CA 5–1969) in which the defendant was indicted for assault. In remanding for an evidentiary hearing the Court stated, "It appears that the issue for the District Court is whether appellant engaged in non-peaceable conduct, i.e., simple assault, when or after he was refused service . . ." (id. at 1192).

In Presley v. City of Monticello, 395 F.2d 675 (CA 5–1968), the criminal charge was disorderly conduct. The Court said "We believe the district court was not clearly erroneous in holding that probable cause existed for arresting Presley for disorderly conduct. Therefore, it cannot be said that the conduct causing the arrest was protected by Section 201 of the Civil Rights Act of 1964." (Id. at 676.)

After hearing evidence on behalf of both parties, this Court is of the opinion that Donald Ray Perkins and Roger Perkins were arrested by the Baton Rouge police solely because the two defendants struck other persons with a gun and a chain. The violent conduct in which they engaged removes them from the protection afforded by the Civil Rights Act of 1964 and the removal statute, 28 U.S.C.A. § 1443(1).

There is no evidence, aside from supposition, that the police instigated or participated in the incident, although their activities after the arrest do not appear proper.

The mere fact that the Perkins brothers might have been acting in self-defense does not confer the right of removal, particularly where there is no allegation that because of race Louisiana will deny the defendants the status of a business invitee in weighing their pleas of self-defense.

In a recent Fourth Circuit case, South Carolina v. Moore, 10 Cr.L. 2005 (CA 4–9/8/71), a defendant charged with homicide sought removal to federal court. He claimed that he had employed only reasonable force in meeting an assault by a white man resentful of his presence in a place of public accommodation. The Court of Appeals affirmed the district court's remand to the state court.

"It has been the uniform holding or assumption of all of the cases in the lower courts that the Civil Rights Acts extend their protections only to peaceful conduct. Violence, whether justifiable or not under state law is beyond their reach."

"Finally, we find no merit in the suggestion that a federal forum for the trial of the self-defense claim must be read into the Civil Rights Act of 1964 in order to make it effective." 10 Cr.L. 2006.

While this matter is before the Court on removal petitions only, with no specific demands for injunctive relief having been made, the Court has, nevertheless, considered these cases in light of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and has concluded that there is not sufficient evidence here of harassment or bad faith prosecution on the part of the State of

Louisiana to bring these cases within the ruling of that case. These cases should therefore be remanded to the State Court and judgment will be entered accordingly.